Council, proceed when ready. Thank you, Your Honor. Good morning, my name is John Farr and I represent the appellant, Munn Seifert, who is seated in the front row along with her daughter, Jessica, who played such a prominent role in the faxing this case. The issue is whether Appellant Munn Seifert put a sufficiently plausible cause of action under the equal, quote-unquote, promptly standard to survive a motion to dismiss for the destruction of her business in Barrow, Alaska, Brower's Cafe. And the standard of review is de novo, agreed by both parties. I would like to start with a discussion of the Restatement Second of Property, Section 16.1, which is, which governs and the continuation of the burdens and obligations of the transferee of property after the transfer, when there's a lease existing on the property, which is dispositive of Eskimos' frequently made argument that Ms. Seifert's dealings were with the Brower Estate and not with Eskimos, and therefore Ms. Seifert should look to the Brower Estate and not to us if there is any problem. The transferee of an interest in a leased property, which is Eskimos' position, of course, is that the transferee is obligated to perform an express promise contained in the lease if, and there's four subsections, Section 16.3 addresses obligations that do not rest on an express promise, the burden and benefit of performance after the transfer. And that gets into implied promises. That's Restatement Second of the Property, Section 16.3. Section 16.2 discusses the flip side, where if it was, for example, the Brower Estate that wanted to enforce the lease against Ms. Seifert after the transfer, or Eskimos that wanted to enforce the lease against Ms. Seifert after the transfer, saying, for example, okay, you have to stay on this property, this lease continues. That's Section 16.2. And the Restatement of Property, Section 16.3, Comment A, states that an obligation rests on an implied promise when its existence is determined on the basis of the facts and circumstances surrounding the lease transaction. The traditional implied promise under the typical lease transaction relates to the quiet enjoyment of the lease property, um, by the tenant. Counsel. The difficulty I'm having with this case is that it appears that there was nothing in writing. That is correct. So how can there be an enforceable leasehold interest if there was nothing in writing to anchor the leasehold interest? That's where we get into the exceptions of waiver, estoppel, and part performance, Your Honor. Well, talk to me about that, because it seems to me that your argument is essentially that a party can waive the statute of frauds by entering into an oral lease agreement. I don't know about entering into one, Your Honor. Here, plainly, there was to enter into a written lease extension, and also the statute of frauds plainly has exception. It seems like if we accept it, I mean, that's how I'm reading this, and I'm not quite sure I understand your argument. If this is and so this is incorrect, you know, let me let me know and tell me in this plainly as you can. What exactly it is that supports what authority you have to support your position, because it seems like you're saying that this oral lease that there was some sort of oral lease agreement and that somehow that oral lease agreement that was entered into fits within an exception to the statute of frauds. And I don't understand that, because if we accepted that, then it would just swallow the rule of the statute of frauds. I don't believe so, Your Honor, because it's not an oral lease, per se. It's an oral lease extension. In addition, there are clearly exceptions to the statute of frauds that depend on the facts and circumstances of the case. And I might add that at the current posture of the case, we're just trying to overcome the equals Trombley pleading standard. Mhm. The facts and circumstances we have alleged to make out exceptions to the statute of fraud. When your original agreement was with Brower, correct? And Brower's sold property. Correct. While your client was operating a business, right? And then, um Eskimos, the buyer terminated the said it was terminating the lease, characterizing it as a month to month. Right. So you sued Eskimo. Correct. Now, how how would your conduct with Brower affect perhaps Brower, assuming Brower could not have terminated the lease because of a stop or some other reason? Why would that affect Eskimo? Well, because the essential idea is that the lease runs with the land. Now, if the lease clearly ran with the land in the sense of it being set for in the lease, it would run with the land without any controversy. Here we have facts and circumstances indicating that the lease was intended to run with the land. The lease itself addresses continuation of the lease. Section 1.2 of the lease refers to the initial term. Section 2.2 says other terms of this lease may follow May 31st, 2009. Section 2.3 provides a mechanism by which the lease is extended. Section 3.2 provides parameters for how future rents are to be agreed upon. The lease itself originally, well, the lease itself contemplates that it will continue past 2009 in the sense that lessee 1 Seifert shall have the first right to negotiate with lessor for a new lease for additional three year terms beginning June 1st, 2009 with the final three year term to end on May 31st, 2016. And that's in the lease section 2.3. I think essentially to say that a written lease can never be orally extended is not the law. If there are facts and circumstances indicating that it was extended orally and that the written requirement was waived and that there's an exception applicable to the statute of frauds, then an oral lease extension can be upheld. And that's what we've done is allege facts and circumstances. But you agree this was a lease with a first right to negotiate for a new lease? Correct, Your Honor. Okay. And you also acknowledge that the statute of fraud requires that any lease agreement for a term exceeding one year be documented in writing and subscribed by the party charged or by an agent of that party. Correct. Okay. So you acknowledge that, correct? Yes. All right. And so I think what you're arguing is that you feel like you have sufficiently alleged in your amended complaint an exception to the statute of fraud. Your position? Yes. More than one exception, Your Honor. And I guess I'm having trouble understanding what's the exception. Well, there's four exceptions, but... I don't understand. What exactly in your amended complaint are you alleging the exceptions? Well, it's set forth in the... I mean, it's not set forth in the... Well, just give me one right now. You should know this. So just tell me what's the exception that you can clearly point to that you've alleged in your amended complaint. All right. Well, I'm looking at paragraphs eight through 15 of the amended complaint. Ms. Seifert's daughter, Jessica, actually asked for a written extension, and the Brown RISD, Mr. Cook, responded that it's too early. However, he did say, don't worry about it. You're OK. And a more affirmative waiver than that is hard to imagine. You can't waive the statute of frauds. Well, there's exceptions. There are exceptions, but I'm trying to figure out how that fits into the exception. Well, waiver and estoppel and part performance are exceptions, Your Honor. And the court, in its order on the court, the trial court didn't really discuss the facts that we alleged and why they would not form any exception in its orders. However, in the order on the motion... But I think you're talking about a contractual lease agreement, and this is a lease that you say was extended beyond a year. This wasn't with an option to extend or, you know, OK, hey, we can waive that, you know, you can stay here longer. At least, I'm having trouble viewing it that way. Well, the lease itself provided for three-year terms, the right to first negotiate for additional three-year terms up to May 31st of 2016. And it said that the extension had to be in writing. However, in 2009, clearly, the extension was not in writing. Eskimos itself initially said, yeah, OK, it was extended up through 2012. We don't have a problem with that. And the trial court didn't... It just said those aren't persuasive, those exceptions, the facts and circumstances alleged aren't persuasive. In its order on the motion for returning these, it said that waiver and estoppel and par performance are well-recognized exceptions in Alaska law. So it recognized the exceptions and stated briefly that the court did not find these persuasive. There have to be cases where facts and circumstances are alleged that support an oral extension of a lease. Clearly, that's the law. It's not the law that oral extensions are never enforceable. What facts did you say that Ms. Seifert alleged to show that a substantial change, that there was a substantial change in her position? What are those facts? Well, the facts that are alleged are that she stayed there. And I believe this is paragraphs 16 through 18 of the amended complaint. So she just continued paying the rent? Well, she continued paying the rent. But if she had known she was on month to month, rather than what Mr. Koch said, you're on an extended term lease, you're good through 2015. If he had said that, if she knew she was on month to month, she would have looked around for another place to put her business. She would have had more notice. Instead, out of the clear blue sky, here comes Estimo saying, OK, get out. In the middle of the winter, she did not have time to find a new place. And so she relied on Mr. Koch's representations. All right, thank you. Oh, yeah, but as long as you were having questions from the panel, I'll do it for the question. All right. Thank you. Thank you. Good morning and welcome to Anchorage. Thank you. Please support. My name is Bruce Moore and I'm here to argue on behalf of Estimo Inc. It sounds like from the questions that I should just go straight to the policy behind the provision of statute of frauds, which in this case is to. Assure and require that there be reliable evidence of long term agreements regarding property, in this case, a lease extension for more than a year in order to avoid disputes and mistakes, misunderstandings and in certain situations, fraud over the terms that are being disputed. And it applies in this situation especially because Eskimos Inc. purchased property from the Brower estate for a business purpose and then is confronted with a tenant who doesn't vacate the premises or disputes or vacating the premises and asserts a oral extension of the lease. For ten or five years and demands three hundred sixty thousand dollars in damages. So what's your response to opposing counsel's reliance on the exceptions to the statute of fraud? Well, my response to that is to look at the restatement section 16.1 and which is, which brings the touch concern rule regarding property into the realm of landlord-tenant relationships. And it requires that there be a written agreement, which there is none here. But what about the exceptions? Well, the issue, the issue with the exceptions is that Eskimos Inc. did not make a promise to Ms. Seifert, did not encourage her, did not receive performance from her in any way that provides sort of the standing to argue. Well, if Brower had come to the conclusion of the first lease, operating the restaurant and successfully happy to be operating the restaurant, Brower comes up, comes in and says, you know, we don't need a further written lease. You are good for the next three years or whatever it is. And she says, well, I think we ought to have a writing written place. Oh, don't worry about it. You're going to be fine. And so she doesn't insist on the written list. And then the thing leases and it is sold. But had Brower not sold and then said, oh, I'm throwing you out because we didn't, we don't have a written lease, could he do that? Well, that's not the case. I understand. But I would say that and by the way, Eskimos disagrees with the statement that we acknowledge the existence of an oral extension until 2012. I think if you look in the brief where we brought those statements forward, it is, well, even if you did this or it doesn't matter if you did this. So they're very qualified statements. So with that in mind, I would say that the Brower estate was the landlord of a tenancy with Monsiefer. And yes, he could have given her notice and terminated the lease because she was on the premise. There's no estoppel. Well, there may be estoppel in that case because those are the two contracting parties. We're arguing there's no estoppel here because that's just all I'm trying to clarify. Correct. So if Siefert had entered into an enforceable lease agreement with Cooke, with the executor, Eskimos would be bound by that agreement? An oral agreement? Into an enforceable lease agreement. If there was an enforceable lease agreement, yeah. So your whole argument, there was no enforceable lease agreement? Right. And it was not enforceable for a very important reason. And that reason was that it wasn't in writing. So there was no specificity to the terms for Eskimos to even understand. And I suppose that it didn't fall within any of the exceptions. No. Even though they're alleging that it does, or arguing that it does, I'm not sure that they are alleging an amended complaint of part performance and the other exceptions. Right. Estoppel. And well, I think, Your Honor, you're addressing the other aspect of the case, not a test, but a statement of how to respond to a 12B6 motion. You accept the facts, the law-applied facts is true, but the court is not required to accept legal conclusions. And that's what, in this case, the amended complaint and the complaint simply conclude that there was an extension. It simply conclude that a lease runs with the land. There's no supporting facts to link between the conduct of Ms. Seifert and the Brower estate to make it through the statute of frauds or the Chess Forum, touches some concerns of land, to be binding on this third party, Eskimos. It seems like his primary argument is that they waived it because it was an agreed moral agreement. Well, that's the... Brower. Yeah, that's Brower. They're arguing that Brower waived it. They didn't sue Brower. And that's the essential purpose of the statute of frauds and this test that accompanies, you know, touches or runs with the land. So your position is that you're representing a third party who comes in and has the right to rely on what the law says and sees the tenant there unless there's some kind of written agreement that would extend the lease beyond month-to-month title to assume that it's a month-to-month lease? That's correct, Your Honor. That's exactly the position that we're taking. And if I could, there were lots of other arguments made in the briefing. There's one in which the appellant claims that Eskimos did not provide proper notice, and I just want to point out that the statute that they're addressing there, AS 945-105, is part of Title IX Code of Civil Procedure for Alaska, and those are the requirements that apply to a forcible entry and detainer action. So if we were in court right now on an FED proceeding, then the elements of notice would be more applicable. They're not here. It's a commercial lease. The lease itself provided for a seven-day notice. Eskimos Inc. provided a 65-day notice. I don't have anything else to add if the panel has questions. It appears not. Thank you. Counsel, we'll give you one minute for rebuttal if you'd like. Thank you very much. Thank you. First of all, I would say that the transferee property is always going to be stuck with whatever the seller did. Here, for example, if the Brower Estate had entered into a written extension and there's no controversy that it's a valid written extension, then plainly what the Brower Estate did would be applicable and would bind Eskimos. So to say that Eskimos is never, that was the Brower Estate. That wasn't us. That's not the law and that's not the way it works out. Here, Eskimos has to live with what the lessor did in the sense that the lessor waived the written requirement and there was waiver and estoppel in our performance by the transferor of the property. Secondly, as far as what we alleged in the amended complaint, as I understand the equal trauma standard, we have to allege facts, not just make, as counsel said, we can't just make conclusory allegations. When the court dismissed the case the first time, I thought that the trial court's problem was with the amount of detail under the equal trauma standard. So we alleged an abundance of detail in the amended complaint and I also, when the motion to dismiss came the second time around, I extensively briefed the equal trauma standard. However, the district court then said, well, there's just nothing in writing so that's good enough and the trial court's analysis seemed to begin and end with that. All right, counsel. Thank you. Thank you to both counsel. The case is argued and submitted for decision by the court. That completes our calendar for the week. We are adjourned.
judges: Rawlinson, Murguila, Schroeder